IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| Alisha Monique Hacket, | ) |
|---|---|
| Plaintiff, | ) |
| vs. | ) Civil Action No. 8:17-3027-RMG |
| Nancy Berryhill, Acting Commissioner of Social Security Administration, | ) **ORDER** |
| Defendant. | ) |

Plaintiff has brought this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of Social Security denying her claim for Supplemental Security Income ("SSI"). In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 DSC, this matter was referred to a United States Magistrate Judge for pre-trial handling. The Magistrate Judge issued a Report and Recommendation ("R & R") on December 28, 2018, recommending that the Court affirm the decision of the Commissioner. (Dkt. No. 23). Plaintiff filed objections to the R & R and the Commissioner filed a reply. (Dkt. No. 25, 26). As explained more fully below, the Court reverses the decision of the Commissioner and remands the matter to the agency with instructions to award benefits to Plaintiff from the onset date of July 11, 2013.

**Legal Standard**

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *See Mathews v. Weber*, 423 U.S. 261 (1976). The Court is charged with making a *de*

*novo* determination of those portions of the R & R to which specific objection is made. The Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge. *See* 28 U.S.C. § 636(b)(1).

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. The Act provides that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). This standard precludes *de novo* review of the factual circumstances that substitutes the Court's findings of fact for those of the Commissioner. *See Vitek v. Finch*, 438 F.2d 1157 (4th Cir. 1971).

Although the federal court's review role is a limited one, "it does not follow, however, that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). Further, the Commissioner's findings of fact are not binding if they were based upon the application of an improper legal standard. *See Coffman v. Bowen*, 829 F.2d 514, 519 (4th Cir. 1987).

The Commissioner, in passing upon an application for disability benefits, is required to undertake a five-step sequential process. At Step One, the Commissioner must determine whether the claimant is engaged in substantial gainful work. If the claimant is not engaged in substantial gainful employment, the Commissioner proceeds to Step Two, which involves a determination whether the claimant has a "severe medically determinable physical or mental

impairment." If the claimant has one or more severe impairments, the Commissioner proceeds to Step Three, which involves a determination whether any impairment satisfies one of the designated list of impairments that would automatically render the claimant disabled. Where a claimant does not satisfy one of the listed disabling impairments, the Commissioner must proceed to Step Four, which involves a determination of the claimant's residual functional capacity ("RFC"). Once the RFC is determined, the Commissioner proceeds to Step Five to determine if jobs exist in significant numbers in the national economy that the claimant can perform in light of her RFC. 20 C.F.R. § 404.1520(a)(4). The claimant carries the burden of establishing the requirements of Steps One through Step Four, but at Step Five the burden shifts to the Commissioner. If the Commissioner fails to carry her burden at Step Five, the claimant is entitled to a finding of disability as a matter of law. *See Pearson v. Colvin*, 810 F.3d 204, 209-10 (4th Cir. 2015).

Where a claimant has more than one mental or physical impairment, the Commissioner is obligated to consider the combined effects of the claimant's multiple impairments "without regard to whether any such impairment if considered separately" would render the claimant disabled. 42 U.S.C. § 423(d)(2)(B). As the Fourth Circuit observed in *Walker v. Bowen*, 889 F.2d 47, 49-50 (4th Cir. 1989), "it is axiomatic that disability may result from a number of impairments which, taken separately, may not be disabling, but whose total effect, taken together, is to render the claimant unable to engage in gainful activity." As the *Walker* court observed, the Commissioner must "consider the combined effect of a claimant's impairments and not fragmentize them." *Id.*

A claimant may offer relevant evidence to support his or her disability claim throughout

the administrative process. Even after the Administrative Law Judge ("ALJ") renders a decision, a claimant who has sought review from the Appeals Council may submit new and material evidence to the Appeals Council as part of the process for requesting review of an adverse ALJ decision. 20 C.F.R. §§ 404.968, 404.970(b).[1] The new evidence offered to the Appeals Council is then made part of the record. The Social Security Regulations do not expressly require the Appeals Council to weigh the newly produced evidence and reconcile it with previously produced conflicting evidence before the ALJ. Instead, the regulations require only that the Appeals Council make a decision whether to review the case and, if it chooses not to grant review, there is no express requirement that the Appeals Council weigh and reconcile the newly produced evidence. *Meyer v. Astrue*, 662 F.3d 700, 705-06 (4th Cir. 2011).

As the Fourth Circuit addressed in *Meyer*, the difficulty arises under this regulatory scheme on review by the courts where the newly produced evidence is made part of the record for purposes of substantial evidence review but the evidence has not been weighed by the fact finder or reconciled with other relevant evidence. *Meyer* held that as long as the newly presented evidence is uncontroverted in the record or all the evidence is "one-sided," a reviewing court has no difficulty determining whether there is substantial evidence to support the Commissioner's decision. *Id.* at 707. However, where the "other record evidence credited by the ALJ conflicts with the new evidence," there is a need to remand the matter to the fact finder to "reconcile that

---

[1] This may include medical evidence arising from treatment after the relevant time period so long as there is "a possibility of...a linkage" between the later medical treatment and the claimant's medical condition during the relevant time period. *Bird v. Commissioner of Social Security*, 699 F.3d 337, 341 (4th Cir. 2012). Indeed, such subsequently produced medical evidence may at times provide the "most cogent proof" of the claimant's disability during the relevant time period. *Id.*

[new] evidence with the conflicting and supporting evidence in the record." *Id.* Remand is necessary because "[a]ssessing the probative value of the competing evidence is quintessentially the role of the fact finder." *Id.*

### Factual Background

Plaintiff was born on August 15, 1989 with significant congenital malformations of her spine. She underwent major spinal surgeries in 1994 and 1996 because of severe pain and other limitations caused by her spinal abnormalities. Tr. 613, 675. As she grew to adulthood, the persistent pain required the daily administrations of large amounts of narcotic pain medications, including Oxycodone and Morphine. Tr. 613, 626, 638, 653, 658. Plaintiff was assessed in school as having learning disabilities and had an annually adopted individual educational program (IEP) to address her mental limitations. Tr. 457-68. Assessments made in the course of Plaintiff's Social Security disability application noted mental limitations, concluding that she had "significant cognitive impairments" and "might experience difficulty in performing work-related tasks," particularly if she was assigned anything beyond "simple tasks." Tr. 205, 220, 506. Indeed, the Administrative Law Judge ultimately found that among Plaintiff's severe impairments was Borderline Intellectual Functioning[2] and that she was limited to "simple routine tasks." Tr. 105, 108.

Plaintiff was under the care of Dr. Gregory Grabowski, a board certified orthopaedic surgeon. He documented her history of prior spinal fusion and "significant scoliotic deformity,"

---

[2] DSM IV defines Borderline Intellectual Functioning as an IQ between 71-84. Diagnostic and Statistical Manual of Mental Disorders, 4th Edition, V62.89 (1994). A person with an IQ of 80 or below falls below the lowest 10th percentile of the population. *See,* IQ Percentile and Rarity Chart, www.iqcomparisonsite.com/iqtable.

which he concluded was the likely source of her pain." Tr. 675. Dr. Grabowski noted Plaintiff's worsening pain and the exacerbation of her symptoms with prolonged sitting and standing. Tr. 679. He determined that further back surgeries would likely not provide Plaintiff pain relief and referred her to pain management physicians to provide her relief from her constant pain. Tr. 675, 680. Thereafter, Plaintiff was prescribed significant doses of narcotic medications on a daily basis, including Morphine, and pain management physicians saw Plaintiff monthly to monitor her medication regime and to confirm the appropriateness of this chronic use of potent pain medications. Tr. 613, 621, 622, 625, 626, 630, 633, 634, 646, 653, 657. Dr. Grabowski made no secret of his opinion that Plaintiff was physically unable to sustain any type of full time work related activities. Tr. 672, 675.

An administrative hearing was held on July 18, 2016, in which Plaintiff and a vocational expert testified. Plaintiff testified that she could not stand long enough to cook her child a meal or take a shower and quit a cosmetology program because she could not stand long enough to take the licensing exam. Tr. 165, 173, 178. The vocational expert was asked about the availability of jobs in the national economy which Plaintiff could perform with the provision that she could sit down every 45 minutes as needed. The hypothetical question posited by the ALJ also included a limitation to positions with "simple, routine tasks." Tr. 189-90. The vocational expert identified a number of positions that Plaintiff could perform, all but one requiring a Reasoning Development Level of Two. Tr. 191-95. The sole Level One position mentioned by the vocational expert, a laundry garment bagger, excluded persons in the bottom 10% percentile and required certain minimal standards for reading and writing. Dictionary of Occupational Titles, 920.687-018, 1991 WL 687965 (1991). The vocational expert was not advised by the

ALJ that Plaintiff had Borderline Intellectual Functioning.

The ALJ concluded that although Plaintiff had multiple severe impairments, including thoracic and lumbar scoliosis, surgical fusion of her spine with Harrington rods, cervicalgia, headaches, asthma, obesity, depressive disorder, anxiety disorder and Borderline Intellectual Functioning, she nonetheless retained the RFC to do less than the full scope of light work. Tr. 105. The ALJ qualified the RFC to provide for a sit option every 45 minutes and a limitation to positions with simple routine tasks. Tr. 108. In reaching this conclusion, the ALJ gave "little weight" to the opinions of Plaintiff's treating specialist physician, Dr. Grabowski (who concluded Plaintiff had disabling physical impairments), or a consulting psychologist, Dr. Cherilyn Taylor (who found Plaintiff demonstrated significant cognitive impairments). Tr. 112-113. The ALJ specifically objected to Dr. Grabowski's failure to specify in his opinion the specific limitations he had found, but made no effort to follow up with the treating specialist physician to obtain this information. Tr. 113. The ALJ concluded her decision by identifying at least four positions Plaintiff could perform, three which were Level Two positions and the other was the laundry garment bagger position. Tr. 114.

## Discussion

1. <u>The Commissioner failed to carry her burden at Step Five of the sequential process to demonstrate there was available a significant number of jobs in the national economy Plaintiff could perform</u>.

The Dictionary of Occupational Titles (DOT) identifies six levels of jobs based upon reasoning ability. Level One requires the ability to "apply commonsense understanding to carry out simple one or two step instructions." Level Two positions requires the ability to "carry out detailed but uninvolved written or oral instructions." DOT, Appendix C, 1991 WL 688702

(1991). The ALJ found that Plaintiff had Borderline Intellectual Functioning and was limited to positions that required only simple, routine tasks. This would limit Plaintiff only to Level One positions. *Henderson v. Colvin*, 643 Fed. App'x 273, 276-277 (4th Cir. 2016); *Rounds v. Commissioner of Social Security*, 807 F. 3d 996, 1002-1003 (9th Cir. 2015).

Social Security Ruling 00-4p provides that the ALJ "has an affirmative responsibility to ask [the vocational expert] about any possible conflict between [his] evidence and . . . the DOT. SSR 00-4p, 2000 WL 1898704 at *4 (Dec. 4, 2000). Thus, the ALJ must ask the vocational expert if his testimony conflicts with the DOT and, if the evidence appears to conflict, the ALJ must "obtain a reasonable explanation for the apparent conflict." *Id.* The ALJ must resolve the conflict before relying on the vocational expert's testimony and must explain the resolution of the conflict in his decision. *Id.* As the Fourth Circuit recently made clear in *Henderson*, where the ALJ fails to address the apparent conflict, "there is no reasonable basis for relying on the [vocational expert's] testimony, and the testimony, thus, could not provide substantial evidence for the denial of benefits." *Henderson* 643 Fed. App'x at 277.

As previously discussed, all positions save one were Level Two positions and exceeded Plaintiff's determined capacity to perform anything more than "simple" tasks. Since the ALJ failed to address this obvious conflict, the ALJ could not rely on the vocational expert's testimony about those positions. The one remaining position, that of the laundry garment bagger, has its own serious difficulties. While the position is rated a Level One position, the DOT provides that the persons occupying the bottom 10th percentile could not perform those duties and must have certain minimal reading and writing abilities. 1991 WL 687965. Most individuals with Borderline Intellectual Functioning fall beneath the 10th percentile (those with IQ's between

71-80). The record fails to demonstrate that Plaintiff's IQ level falls within the minority of persons with Borderline Intellectual Functioning above the 10th percentile (those with IQ's between 81-84). The burden for demonstrating the availability of jobs in the national economy that the claimant can perform is placed on the Commissioner. The testimony of the vocational expert is legally deficient because it fails to address the apparent conflict between the DOT and the vocational expert's testimony and, thus, cannot be the basis to provide substantial evidence that there exist jobs in significant numbers in the national economy which Plaintiff can perform. In the absence of such evidence, the vocational expert's testimony "could not provide substantial evidence for the denial of benefits." *Henderson* 643 Fed. App'x at 277.[3] Consequently, the Commissioner has failed to carry her burden at Step Five, which requires reversal of the Commissioner's decision.

2. The Commissioner erred in failing to have a fact finder weigh new and material information submitted by the Plaintiff to the Appeals Council and to reconcile the new evidence with the conflicting and supporting evidence in the record.

A critical finding in the ALJ's decision was that Plaintiff's severe back pain was the result of oversized breasts and that her recent breast reduction surgery addressed this problem. Tr. 109. This finding was based on a single line in a treating plastic surgeon's letter that Plaintiff's oversized breasts were the cause of her chronic pain and not other physical conditions.

---

[3] The Commissioner in Social Security Ruling 83-12 noted that most unskilled jobs are not structured to allow a worker to sit or stand at will and it would be "unusual" to allow the sit/stand option for light work since such jobs anticipate prolonged standing and walking. SSR 83-12, 1983 WL 31253 at *4 (1983). The ALJ asked the vocational expert whether imposing the sit/stand option for Plaintiff would limit the number of available positions she could perform with light work. Initially, the vocational expert said this limitation would reduce the number of available jobs and then, when pressed by the ALJ for a number, changed his testimony and said there would be no reduction. Tr. 192. Common sense, as well as SSR 83-12, would suggest that the vocational expert's original testimony was far more credible.

Tr. 687. This conflicted with numerous notes in the records of Plaintiff's treating orthopaedic surgeon and pain management physicians stating that her congenital spinal abnormalities were the primary cause of her chronic pain. Tr. 613, 634, 657, 674, 680.

The ALJ obtained no records post-breast surgery to confirm his assumption that the breast reduction surgery had addressed Plaintiff's chronic pain, although Plaintiff testified at the hearing that she still lived with chronic pain despite the breast surgery and still required large amounts of narcotic medications on a daily basis. Tr. 167, 173, 174, 176. After the ALJ's decision, Plaintiff provided to the Appeals Council additional records from her treating pain management physicians which clearly documented that her pain had not disappeared as a result of the breast reduction surgery and had actually worsened and required large doses of narcotic pain medications. Tr. 46, 48, 57, 66, 76, 88, 92-93.

These newly provided medical records clearly debunked the dubious findings of the ALJ that Plaintiff's severe back pain was the result of oversized breasts and that the reduction surgery had addressed this problem. It also provided further support to the opinions of Plaintiff's treating physicians that her chronic pain problems arose from the congenital malformations of her spine. Nonetheless, the Appeals Council refused to consider this evidence because the records came from a period subsequent to the date of the ALJ's decision of November 2, 2016 and "does not relate to the period at issue." Tr. 2. Instead, it was suggested that Plaintiff file a new application for disability, despite the fact that her present application had been pending since 2013.

It is well settled that if a claimant submits to the Appeals Council new and material evidence that a fact finder must weigh that evidence and reconcile it with supporting and conflicting evidence in the record. *Meyer v. Astrue*, 662 F. 3d at 705-06. Further, the Fourth

Circuit has made clear that medical records from a later period should not be disregarded if there is a "linkage" between the present records and the earlier period. In a situation where there has been evidence of progressive deterioration of a condition that existed during the relevant time period, "retrospective consideration" should be given to those medical records. *Bird v. Commissioner of Social Sec. Administration*, 699 F.3d 337, 340-342 (4th Cir. 2012).

The records provided to the Appeals Council clearly reference the same underlying congenital abnormalities and address a glaring gap in the record regarding whether the Plaintiff's breast reduction surgery had resolved her chronic pain condition. These newly produced records fully corroborate the opinions of Plaintiff's treating physicians (which the ALJ gave "little weight") and debunk the thinly documented assumption of the ALJ that the breast reduction surgery had fixed Plaintiff's chronic pain condition. The Court finds astounding the Appeals Council's willful failure to adhere to the Fourth Circuit's ruling in *Meyer* that new and material evidence must be weighed and reconciled with other record evidence by a fact finder, which is particularly compelling in this case. The failure to weigh and reconcile the new and material evidence presented for the first time to the Appeals Council requires reversal of the Commissioner's decision.

    3.    <u>The ALJ's finding that Plaintiff can stand, sit or walk six hours in an eight hour workday is not supported by substantial evidence.</u>

The ALJ found that Plaintiff was capable of standing, sitting, and walking six hours in an eight hour day, an essential finding for Plaintiff to meet the requirements for light work. SSR 83-10, 1983 WL 31251 at *5-6 (1983); Tr. 108. The record is replete with references to Plaintiff's capacity to stand, sit, and walk and documents the fact that she is seriously impaired in these

areas. Dr. Grabowski documented in his office note of February 1, 2016, that Plaintiff's pain is "worse with prolonged sitting and standing." Tr. 679. Dr. Ryan Krafft, a pain management specialist, noted in his office record of April 19, 2016, that "prolonged activities aggravate the pain." Tr. 662. Dr. Lloyd Miller, another pain management specialist, noted on November 18, 2015, that Plaintiff's pain symptoms are "aggravated by exertion." Tr. 638. Plaintiff testified, without contradiction, that she could stand for only 10-15 minutes at a time and was unable to stand long enough to cook a meal or take a shower. Tr. 173, 176, 178. She also testified that she did not seek to obtain a license as a cosmetologist because she could not stand long enough to complete the clinical part of the exam. Tr. 165.

Two chart reviewing physicians for the Social Security Administration offered the opinion that Plaintiff had no severe conditions at all, which the ALJ indicated he gave "little weight" because the evidence in the record demonstrated the presence of severe impairments. Tr. 112.[4] Although it is difficult to state unequivocally in a record exceeding 700 pages that there is absolutely no evidence to support the ALJ's finding that Plaintiff can sit, stand and walk six hours in an eight hour day, it is notable that the ALJ points to no such evidence in the record and Plaintiff's own treaters clearly consider her capacity to sit, stand and walk for any prolonged period to be profoundly impaired. Taking the record in its entirety, there is clearly not substantial evidence in the record that Plaintiff can stand, sit or walk six hours in an eight hour day, which makes the ALJ's finding that she is capable of performing light work lacking in substantial

---

[4] These reviews by the non-examining and non-treating physicians occurred in 2013 and 2014 and would not have included the medical records of Dr. Grobowski or the pain management doctors, which were prepared after those dates. Tr. 202, 216.

evidence.[5] This requires a reversal of the Commissioner's decision.

    5.    <u>The ALJ failed to consider the combined effect of Plaintiff's mental and physical impairments.</u>

It is well settled that where a claimant has multiple mental and physical impairments, it is critical that the ALJ consider the combined effect of these impairments and "not fragmentize them" by addressing them separately. *Walker v. Bowen*, 889 F. 2d 47, 49-50 (4th Cir. 1989). In determining Plaintiff's RFC at Step Four, the ALJ separately addressed Plaintiff's multiple mental and physical impairments (severe spinal abnormalities, Borderline Intellectual Functioning, etc.) but never addressed the combined effect of these severe impairments. Further, there was no serious discussion of the effects of daily doses of large amounts of narcotic medications, including Morphine, on Plaintiff's capacity to sustain work. The Commissioner's failure to address the combined effects of Plaintiff's mental and physical impairments constitutes an additional legal error and requires reversal of the Commissioner's decision.

**Remedy**

This Court's general practice is to remand decisions to the Commissioner for further administrative action, but it is well settled that the District Court has the authority to award benefits. 42 U.S.C. § 405(g). An award of benefits by the District Court is appropriate where the record is fully developed and it is clear that the Commissioner would be required to award benefits on remand. *See Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004); *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001); *Williams v. Comm'r of Soc. Sec.*, 104 F.

---

[5] SSR 83-10 requires a claimant performing sedentary work to be capable of standing two hours and sit for six hours in an eight hour day. There is not substantial evidence in the record to support a finding that Plaintiff is capable of standing up to two hours or sitting for six hours in an eight hour day. 1983 WL 31251 at *5.

Supp. 2d 719, 721 (E.D. Mich. 2000). This is particularly true where there has been a significant lapse of time in the administrative processing of the claim. *See Holohan*, 246 F.3d at 1210; *Podedworny v. Harris*, 745 F.2d 210, 223 (3rd Cir. 1984). This application for disability benefits was filed on July 11, 2013, now approaching six years ago.

It is apparent from a review of the entire record in this matter and controlling legal standards that Plaintiff is entitled to an award of disability benefits on several separate and independent grounds. First, the Commissioner has failed to carry her burden at Step Five to show that there exist jobs in significant number in the national economy which Plaintiff could perform. Second, there is not substantial evidence in the record to show that Plaintiff could meet the standing, sitting, and walking requirements for either light or sedentary work. Third, when the entire record is considered, including the new and material evidence presented to the Appeals Council, and the combined effect of Plaintiff's mental and physical impairments are considered, there is not substantial evidence to support a finding that Plaintiff is capable of performing sedentary or light work. The time to award Plaintiff the benefits she is entitled has now arrived and is long overdue.

## Conclusion

Based on the foregoing, the Court hereby reverses the decision of the Commissioner pursuant to Sentence Four of 42 U.S.C. § 405(g) and remands the matter to the agency with instructions to award benefits from Plaintiff's onset date of July 11, 2013.

**AND IT IS SO ORDERED.**

_____
Richard Mark Gergel
United States District Court Judge

February 14, 2019
Charleston, South Carolina